from the habeas denial, Asniewski and Ajamian v. United States. Good afternoon. My name is Sean Maher and I represent the petitioner-appellant Dr. Peter Ajamian. This appeal is being heard in tandem with the two cases you just heard, but unlike Mr. Rotigliano and Dr. Lesniewski, Dr. Ajamian did not go to trial. He pleaded guilty and he pleaded guilty pursuant to a plea agreement. However, as Mr. Ryan has just described to the court, the same government hoax, namely that hundreds of LIRR employees were not occupationally employees, fully met the RRB's own criteria for occupational disability. I'm sorry, when you say hoaxed, are you implying that the government knew full well at the time of the trial that the later determinations would reveal that all of these people were disabled? What I'm saying is it seems from the evidence before the government this entire time period that it's clear that the people did not meet the permanent disability standard that the government seemed to proffer as the standard at trial. Although we've reviewed some of the evidence about false statements made, unnecessary tests required, exaggerations admitted and so on, right? So I'm not sure it's fair to call it a hoax, but please go ahead. You have another hurdle to clear. Your client pleaded guilty pursuant to an agreement that waived his right to collaterally attack a sentence within the range that he received and you'd argue to us that that should not be enforced because he did not specifically allocate to the intended loss and counsel was ineffective. Yes. Your ineffectiveness claim provides only conclusory assertions and your intended loss figure seems to be or your failure to allocate to it seems to be undercut by the stipulation as to the loss amount. Why don't you tell me why you think you nevertheless can appeal or could pursue the habeas challenge here? Sure. The stipulation of course was agreed to by prior counsel who we are alleging was ineffective for basically agreeing with that number. And again, the first onus I think is on the government who was proffering. Your client allocated that he prepared disability narratives for large numbers of Long Island Railroad employees who were not in fact disabled. So, you know, that provides considerable support for the fact that there was a sizable loss here. Well, the issue at this point is what is meant by large. In large, there's a huge difference. You know, the loss right now is $116 million. All right. And that was the stipulation. It was part of his plea agreement and he acknowledged that he was familiar with his plea agreement. He did do that. And again, that was extent. How do we get around the fact that there's a waiver here? Because the waiver was made without it being knowing and voluntary because the advice he received from his lawyer was that the government could prove their case. Even though the lawyer acknowledged that there were some applications that he didn't even know whether they were approved or not, but they should just assume that they're going to be. The advice that Dr. Jamian received did not amount to effective assistance of counsel. That's why he agreed. He had the full brunt of the US government coming down on him and saying you're going to get 300 years in prison. His lawyer said they're going to parade potentially hundreds of people who will come in court and lie against you. That was in Dr. Jamian's pro se petition. He wrote that in his petition. He was told witnesses will come and lie against you. And you are facing the rest of your life in prison. And he folded. He was guilty because he thought he was going to be convicted based on perjured testimony? That is what Dr. Jamian has placed in his pro se petition that was put before the district court and was ruled on before I was appointed. So that is in the record. So his plea is perjurious? He pleaded guilty to something he's not guilty of? I'm not saying his plea is perjurious. The issue- What else does it mean if he pleaded guilty without thinking that he would be convicted based on perjured testimony? There are two issues. The issue right now before the court is the issue of resentencing. And what is the appropriate loss amount that should be applied to Dr. Jamian? I believe that the record before the court unequivocally shows that the district court has used basically false information to base its sentencing decision for Dr. Jamian. And that should not stand. I'm not sure I understand that because it would be intended loss, not actual loss in any event. And to the extent that your client provided false narratives, all of that would be intended loss because the government would not have paid, indeed canceled, every benefit they awarded based on these falsified documents. So I'm not sure that just the possibility of the actual loss being less helps your client. Because the intended loss was generated off of the actual loss figures that the government proffered. Which were based on the figures that were paid on the falsified documents. And we know at this point that the RRB has not paid out a dime, as far as we know, for a false application. Actually, you're confusing actual loss with intended loss. Thank you. I understand the difference, your honor, but the intended loss that was used in this case was premised upon the actual loss numbers that the government generated through their statistical analysis. They gave that to Dr. Jamin's lawyer. He said, he counseled Dr. Jamin. Your client, when he pled guilty, admitted under oath that he was supporting these applications when he knew that they were not in fact disabled and could have continued working. And given the number, why isn't that a basis, a legitimate basis for finding intended loss in the amount in question, to which he agreed? Because that is not tied to the number. That's an admission of guilt, but it is not an admission to the astronomical loss figures that the district court adopted at the behest of the government and at the behest of counsel that did not do his job properly. Thank you. Thank you. Mr. Jerkin. For as many doubts as I have about Dr. Lesnowski's conviction, it has been a mystery to me how he ends up with the same sentence that Dr. Jamin gets. Unless there's a trial tax, and I don't think there was, because I think even Judge Marrero began to see how the government's evidence was shifting. But eight years was way too much. And no matter what, how Mr. Klein concludes in our argument, even if you give the government every benefit, 20%, if you go with their 20% argument, which I don't concede, or does Mr. Klein, 20% of 93.4 million, that still gives us a guideline range below what the low end was still better than, it was 87 months. I'm not sure I'm following how this is a habeas challenge as opposed to a direct appeal challenge on the argument you've just advanced. What's the basis for seeking this on habeas that you didn't seek on direct appeal challenge to this sentence? Due process. That Judge Marrero, and we lay it out in the very first page under Torres versus the United States. That a defendant not be sentenced based on material false information and not be sentenced based on material misapprehension of fact. It would be the latter that I think. That would go to the, as I said to counsel, the fact that we now know that the intended loss may be less doesn't go to whether the, I'm sorry, that the actual loss is less doesn't go to whether the intended loss is any less. I have a hard time following that because- It may be that when doctors providing untainted opinions supplied this information, the RB paid it out, but they weren't prepared to pay out anything on false information. That's why they canceled every one of your client's applications. And so the intended loss by your client, it seems to me, remains unchanged. Would you want to say why that shouldn't be the conclusion? Well, because I think that presumes that every patient that he ever submitted was not disabled, which is not the case. No, it assumes that every submission he provided was falsified or fraudulent. But you can't make that claim. The record doesn't support that. And that he could have challenged in his own sentence and could have challenged on direct appeal. But we couldn't, that claim is based, again, on the statistics. The whole case, sentencing including, was driven by the statistical arguments, and we couldn't get around that. What I'm trying to say is even from a due process standpoint, the actual loss amount has to become very relevant, that's the problem here. If there's a million dollar actual loss versus 79 million, that's a huge difference. And I think we should get a re-sentencing. I was dumbfounded when Judge Marrero brought us back for a hearing, everybody thought we were going to get a re-sentencing. And lo and behold, all we got to do was argue, and nothing ever happened. It was a mystery to me. I read his opinion, and if you read it, I had a hard time understanding why we didn't get a re-sentencing based on what he said. And all he did is have us come in and re-argue the briefs. I don't know what changed on that, but I can't help but think, knowing Judge Marrero as I got to know him, that it would have affected the outcome. I just think it would have, and I think, I just think eight years. How do you explain eight years for, thank you. Geronimo, you are doing this as well for the government? Yes, Your Honor. Your Honor, let me just start with a couple points about Dr. Portions of Dr. Damien's challenge are time barred, and portions are waived. And so let me start with that. His challenges to the voluntariness of his plea, and his challenges to the effectiveness of his counsel in negotiating the plea, in discussing with him his options, and whatever they did at sentencing are all time barred, and they are also not properly before this court. Those were claims that were raised before the district court. Judge Marrero rejected them, and there's no certificate of appealability on those issues. The only thing that's properly before this court is whether Dr. Damien is entitled to a resentencing. That argument is squarely waived by his plea agreement. He could not challenge that in the district court, and he cannot appeal the denial of that challenge. Both of those challenges are waived, and his appeal should be dismissed. But on the merits of all of these claims, as the court has noted, Judge Marrero sentenced all of the defendants based on their intended losses. That's what he said at sentencing. It's what he has repeatedly found in this case with respect to these particular motions. He found it in denying the motions for resentencing. He made it explicitly clear in rejecting Mr. Titigliano's motion for bail pending appeal. The sentences were based on intended loss. There is nothing that the RRB's post-board order recertifications did or frankly could do with respect to what was in the defendant's minds at the time that they were perpetuating this fraud. So there's no ability to challenge their intended loss. And Judge Roger, you had suggested that this was a challenge that could have been raised on direct appeal. It actually was raised on direct appeal by Mr. Titigliano. He challenged the calculation of his intended loss, and this court found that the methodology used by Judge Marrero in calculating intended loss was proper. So for all those reasons, Your Honor, the defendant's challenges- I understand that you have handled the criminal cases here. But there is something disquieting about the fact that in the end, such a large number of the claimants turned out to get disability benefits. And I indicated that I read through the transcript and I saw where the Inspector General expressed some concern about that. I mean, is it your position to us that a criminal court, at a court hearing, a criminal appeal should just be unconcerned with the fact that it turned out that most of these people who reapplied got benefits again? Your Honor, yes, both from an evidentiary standpoint and from a sentencing standpoint. It is simply irrelevant. Two things, what the- I just can't help but imagine that if the sentencing judge knew that out of ab initio, the difference between not one of the people was entitled to benefits and well, most of them were, might be viewed as two different circumstances. On that, Your Honor, Judge Marrero was the judge who sentenced each of the defendants. He was the judge who calculated their guidelines, and he was the judge who imposed sentence on each of them. And what he remained convinced of was that each of the defendants were crucial participants in a massive fraud. And that their guidelines were calculated correctly, and that they were entitled to the sentences that he had imposed on them. And to be clear on this point, the government has argued repeatedly in the district court and here that the standard for resentencing on a 2255 is a very, very high standard. It is a complete miscarriage of justice. That is not even a standard that Judge Marrero has been applying or has been articulating. His view as the judge who presided over the trial and the judge who sentenced each of the defendants is that nothing about what the RRB did now affects any of that. Both with respect to their convictions and with respect to his imposition of sentence. Thank you all very much. We're going to take these matters under advisement, try and get you a decision. Last case on our calendar in Ray Everton, Aloysius Sterling is on submission, so we stand adjourned. We're going to stand adjourned.